## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRIAN REYES | * | CIVIL ACTION NO. 2:19-cv-13734 |
| Plaintiff | * | |
| | * | |
| VERSUS | * | |
| | * | JUDGE: IVAN L.R. LEMELLE |
| THE DOW CHEMICAL COMPANY | * | |
| Defendants | * | |
| | * | |
| | * | MAGISTRATE: DANA DOUGLAS |

* * * * * * * * * * * * * * * * * * * * * * * * *

### THE DOW CHEMICAL COMPANY'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF LANE VANINGEN

**MAY IT PLEASE THE COURT:**

Comes now, Defendant, The Dow Chemical Company ("Dow"), who submits this Memorandum in Support of its Opposition to Plaintiff's Motion *in Limine* to Exclude the Testimony of Lane VanIngen (Rec. Doc. No. 65).

### I.    Facts and Background

Plaintiff, Brian Reyes ("Mr. Reyes" or "Plaintiff"), filed suit on or about June 19, 2019, in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, alleging that he sustained injuries associated with a tractor-trailer roll-over accident that occurred on or about June 28, 2018, in the Parish of Jefferson, State of Louisiana.[1]

During the relevant time period, Dow entered into a contract with Frontier Logistics, LP ("Frontier") for the vendor packaging, and warehouse services, to be fulfilled by Frontier at its own warehouse facilities adjacent to the Dow facility in Plaquemine, Louisiana.[2]  Plaintiff Brian

---

[1] *See* R. Doc. No. 1-2, at ¶ 1.  On November 20, 2018, Dow removed the state action to this Court on the grounds of complete diversity and damages in excess of $75,000.  R. Doc. No. 1, at 3.

[2] *See* Services Agreement between Frontier Logistics, LP, and The Dow Chemical Company, attached hereto as Exhibit "A."

Reyes was a truck driver employed by Triple G Express, Inc. ("Triple G"), responsible for transporting materials, in this instance micro-beads, from Frontier's facility to the Port of New Orleans.

On June 28, 2018, Plaintiff departed from Frontier's facility in his tractor, towing the trailer containing micro-beads and heading towards the Port of New Orleans.  After it was determined that Plaintiff would not make the cut off at the Port of New Orleans, Mr. Reyes was instructed to reroute to the Triple G Yard.  As he rounded a curve on the exit ramp at Interstate 10 and Clearview Parkway South, Mr. Reyes alleges that the loaded cargo in the trailer "shifted," causing a tire to blow out, and the trailer to tip sideways, pulling down the entire tractor-trailer with it.[3]

Plaintiff alleges that Dow and/or Frontier improperly loaded and secured the cargo inside the container.  Despite the fact that Dow did not load the container, Dow further argues that Plaintiff cannot overcome his burden in proving Dow had a duty to secure the load and that Dow breached such a duty.  In furtherance of its defense, Dow has retained Mr. Lane VanIngen ("Mr. VanIngen"), motor carrier compliance expert, to testify regarding the respective inter-play between a motor carrier/truck driver and a carrier under the Federal Motor Carrier Safety Regulations Act.

Plaintiff seeks to exclude the opinions of Mr. VanIngen on the basis that Mr. VanIngen's opinions are "legal conclusions."[4]  For the reasons set forth herein, Plaintiff's motion should be denied.

---

[3] *See generally,* Plaintiff's Petition for Damages, Rec. Doc. No. 1-2.
[4] *See* Plaintiff's Motion *In Limine* to Exclude the Testimony of Lane VanIngen, Rec. Doc. No. 65, and Memorandum in Support of Motion *In Limine* to Exclude the Testimony of Lane VanIngen, Rec. Doc. No. 65-1, at 1.

## II.     Rule 704 and The *Daubert* Standards

Under the Federal Rules of Civil Procedure, the following is required of an expert witness:

 (i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

 (ii)    the facts or data considered by the witness in forming them;

 (iii)   any exhibits that will be used to summarize or support them;

 (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

 (v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition;

 (vi)    and a statement of the compensation paid for the study and testimony in the case.[5]

The admissibility of expert testimony in federal courts is governed primarily by Federal Rules of Evidence 702, 703, and 704.  Rule 702 provides that an expert must be qualified and the testimony must be relevant and reliable.[6]  Specifically, the Rule is as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.[7]

Going further, Rule 703 provides as follows:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in

---

[5] Fed. R. Civ. P. 26(a)(2)(B).
[6] Fed. R. Evid. 702.
[7] Fed. R. Evid. 702.

the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclosure them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Further, Rule 704 provides that "[a]n opinion is not objectionable because it embraces an ultimate issue."[8]  "The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one."[9]  In *Owen,* the Fifth Circuit explained:

The example given in the Advisory Committee Notes to Rule 704 is helpful.  The question "Did T have capacity to make a will?" should be excluded.  The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible.  The first question is phrased in such broad terms that it could as readily elicit a legal as well is a fact-based response.  A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read.  Moreover, allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.[10]

Trial courts are afforded wide discretion when evaluating the admissibility of expert testimony.[11]  Given the broad spectrum of expert testimony that will assist the trier of fact in understanding the case, courts recognize that "the rejection of expert testimony is the exception rather than the rule."[12]  Rather than simply excluding the expert testimony, the "traditional and appropriate means" of attacking a party's evidence include "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[13]  Here, Plaintiff

---

[8] Fed. R. Evid. 704.
[9] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).
[10] *Id.*
[11] *Hamling v. United States*, 418 U.S. 87, 94.
[12] Fed. R. Evid. 702, adv. Comm. Notes 2000.
[13] *Daubert,* 509 U.S. at 596.

fails to carry his burden of proving that Dow's expert, Mr. VanIngen, should be struck from testifying.  In fact, the record demonstrates otherwise.

### III.  Mr. VanIngen Has Been Routinely Offered and Accepted as an Expert in the Field of Transportation Compliance.

In determining whether to allow expert opinion testimony, the court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education.[14]

Mr. VanIngen is a highly credentialed, deeply experienced transportation compliance expert whose methodologies are sound and whose opinions will assist the jury.  Mr. VanIngen has evaluated motor carriers as both a federal regulator/investigator of motor carriers and as a private sector consultant to the transportation industry regarding U.S. Department of Transportation (USDOT) audits and compliance with the Federal Motor Carrier Safety Regulations.[15]  Mr. VanIngen began his career in the transportation industry as a Special Agent I Motor Carrier Safety Specialists with the USDOT Federal Motor Carrier Safety Administration from 1989 to 2002.[16]

From 2002 to present, Mr. VanIngen has been providing expert guidance to the transportation industry regarding safety and compliance matters.[17]  Relying upon his knowledge, skill, experience, training, and education in the evaluation of motor carriers, Mr. VanIngen also serves as a testifying and consulting expert regarding the application and interpretation of the Federal Motor Carrier Safety Regulations to transportation industry partners, including motor carriers, and provides deposition and trial testimony on a broad array of issues related to the

---

[14] *See Moore v. Ashland Chemical, Inc.*, 126 F.3d 679, 684 (5th Cir. 1997).
[15] Exhibit "B," Lane VanIngen's Curriculum Vitae.
[16] *Id.*
[17] *Id.*

application of the Federal Motor Carrier Safety Regulations and other safety regulations.[18]  Mr. VanIngen has scores of experience testifying in both state and federal courts across the nation regarding his areas of expertise.[19]  Specific to Louisiana federal courts, Mr. VanIngen's opinions have been utilized and upheld by both the Middle District of Louisiana and the Western District of Louisiana.[20]

Mr. VanIngen's analysis, which addresses compliance of state and federal motor carrier safety regulations, is founded upon decades of experience and specialized training.[21]  Although Plaintiff's Motion does not purport to challenge his qualifications, Mr. VanIngen's curriculum vitae establishes that his qualifications are more than sufficient to allow him to opine on compliance of state and federal motor carrier safety regulations.[22]  Mr. VanIngen's report, furthermore, details the numerous cases in which he has been called upon to evaluate a party is subject to the Federal Motor Carrier Safety Regulations and what duties and obligations that entails.[23]  While Mr. VanIngen's extensive background and lengthy qualifications are not disputed, they provide an ample basis for his opinions in this case.  Considering Mr. VanIngen's eminent qualifications to opine on such regulations, it is clearly within Mr. VanIngen's purview of the

---

[18] *Id.  See also,* Exhibit "B," Lane VanIngen's Rule 26 Testimony List.

[19] *See id,* Lane VanIngen's Rule 26 Testimony Listing.

[20] *See, Franco v. Mabe Trucking Co., et al.,* No. 5:17-CV-00871, Rec. Doc. No. 151 (W.D. La. 2019) (Judge Doughty denying Plaintiff's Motion *in Limine* seeking to exclude Mr. VanIngen and concluded that Mr. VanIngen is an expert and can testify whether there were any violations of applicable standards).  *See also, Dragna v. A&Z Transportation,* No. 12-449-SDD-RLB, Rec. Doc. No. 83 (M.D. La. 2014) (Judge Dick denying Plaintiff's Motion *in Limine* as to Lane VanIngen, holding that each party's expert is allowed to provide their respective opinion testimony).  Mr. VanIngen also provided deposition testimony in *Rucker, et. al. v. Brigham, et al.*, No. 16-CV-3800 (E.D. La. 2017).

[21] *See* Expert Report of Lane VanIngen, including Mr. VanIngen's Curriculum Vitae and Rule 26 Testimony Listing, attached *en globo* as Exhibit "B," at 1 ("My opinion is based on my knowledge and experience in the application of the Federal Motor Carrier Safety Regulations and applicable safety regulations at both the state and federal levels.  Also, my opinion includes conclusions drawn from review of the documents provided to me to date and my understanding of the motor carrier industry.").

[22] Exhibit "B," Lane VanIngen's Curriculum Vitae and Rule 26 Testimony List.

[23] *See*, Exhibit "B," Lane VanIngen's Rule 26 Testimony List.

Court to instruct the jury as to the proper governing standard and will clearly "assist the trier of fact to understand the evidence."[24]

### IV.    Mr. VanIngen's Testimony Applies a Factual Basis to the Law and Will Assist the Jury with Fact Issues Concerning the Application of State and Federal Motor Carrier Safety Regulations.

Plaintiff argues that Mr. VanIngen's testimony will not assist the trier of fact because his opinions "only address who he believes is at fault for the accident; the duties of care owed; and the scope of those duties—all of which are legal determinations to be made by the Court. . ."[25]  To the contrary, Mr. VanIngen does not try to provide legal opinions, nor does he infringe on this Court's role in deciding issues of law.  Rather, Mr. VanIngen's report make clear that he will not be testifying about the ultimate legal issue in this case—whether Dow owed a legal duty, or whether such a duty was breached—but instead will testify as to whether or not Plaintiff and/or Plaintiff's employer, Triple G, complied with the duties prescribed by Federal Motor Carrier Safety Regulations.[26]

Plaintiff attacks three opinions contained in Mr. VanIngen's report.

1. Triple G Express Inc., an authorized motor carrier, and its driver Brian K. Reyes, were subject to the Federal Motor Carrier Safety Regulations (FMCSRs) on June 28, 2018 the date of the crash that is the basis for this case.

2. DOW Chemical (DOW) is a product shipper as it relates to the subject shipment, and factually is not subject to the Federal Motor Carrier Safety Regulations (FMCSRs) as a shipper of non-hazardous material.

3. The duties prescribed in the Federal Motor Carrier Safety Regulations (FMCSRs) are non-delegable and apply solely to the motor carrier, Triple G, and its driver Brian K. Reyes.  Those duties include an obligation to assure that a shipment is properly loaded and secured upon a transport vehicle.[27]

---

[24] Fed. R. Evid. art. 702.
[25] Memorandum in Support of Motion *in Limine* to Exclude the Testimony of Lane VanIngen, Rec. Doc. No. 65-1, at 1.
[26] *See generally,* Exhibit "B," Expert Report of Lane VanIngen.
[27] *See id.*

Specific to Conclusions No. 1 and 2, it is important for the jury to understand all motor carriers involved in this accident, including Mr. Reyes' employer for which he was driving at the time of the accident, had certain obligations under Federal Motor Carrier Safety Regulation guidelines.  Mr. VanIngen's report discusses the guidelines of the FMCSRs relating to: (1) Triple G, as a USDOT regulated motor carrier of property; (2) Plaintiff Brian Reyes, as a driver; and (3) Dow, as a product shipper of micro-beads.  Mr. VanIngen's opinions focus on how these guidelines affect the various parties in the case, specifically explaining that federal regulations "provide that both a motor carrier and driver are bound by certain parts of the FMCSRs, with each bearing certain responsibility for transportation safety and compliance issues."[28]  Mr. VanIngen's initial determinations made in Conclusions No. 1 and 2, detail the responsibility of the parties, including the responsibility of basic safety management controls for the safe loading and cargo securement procedures, which is highly relevant to Plaintiff's claims.[29]

As for Conclusion No. 3, Mr. VanIngen's opinions provide guidance regarding instances in which the shipper is not the operative motor carrier, as well as instances in which a motor carrier is contracted to transport shipments that are loaded and sealed.[30]  As discussed in Mr. VanIngen's report, the FMCSR anticipates these types of scenarios, and Mr. VanIngen will testify regarding the interpretation of the applicable federal regulations addressing such scenarios.[31]  In this matter, Plaintiff's claims hinge on the allegation that the cargo was already loaded and sealed improperly prior to Plaintiff's arrival, and that Plaintiff had no opportunity to inspect the cargo.  The issue of how a motor carrier may fulfill its responsibilities for proper loading is certainly relevant in

---

[28] *See id.,* at 3.
[29] *Id.*
[30] *See,* Exhibit "B," Expert Report of Lane VanIngen, at 4-5.
[31] *Id.*

determining whether such responsibilities were complied with.  Importantly, there is no mention of fault for the accident in any of the three opinions from Mr. VanIngen.

Furthermore, Plaintiff's contentions that Mr. VanIngen's testimony will not assist the trier of fact, and that his opinions consist of pure legal conclusions, are factually incorrect and inconsistent with prevailing authority.  Although it is Defendant's position that the opinions expressed in Mr. VanIngen's report are not legal conclusions, even if they were, case authority is clear that an expert witness may offer an opinion on mixed questions of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts.[32]  Additionally, there is no doubt that an expert may also explain what the law is because "the standard of care is defined in part by the law."[33]  Here, Mr. VanIngen is being offered to address questions of fact regarding the standards to be followed by Federal Motor Carrier Safety Regulations and applicable safety regulations.  There is nothing improper about that.

As the Fifth Circuit has stated, "the issue here is whether [the expert] is testifying to purely legal matters or legal matters that involve questions of fact."[34]  The Fifth Circuit's opinion in *Waco International, Inc. v. KHK Scaffolding Houston, Inc.,* 278 F.3d 523 (5th Cir. 2002) demonstrates that Mr. VanIngen's testimony complies with the Fifth Circuit's standards for admissibility of an expert addressing legal standards.  In *Waco International*, the Fifth Circuit reviewed the trial court's decision to permit an intellectual property lawyer to testify in a trademark infringement suit.  The trial court denied a motion to strike the testimony on the grounds that "in order for the jury to understand the standard of care as it applies to a trademark owner's conduct in seeking a

---

[32] *See Askanase v. Fatjo*, 130 F.3d 657, 672-72 (5th Cir. 1997).
[33] *See Waco International, Inc. v. KHK Scaffolding Houston, Inc.,* 278 F.3d 523, 533 (5th Cir. 2002) (denying a motion to strike the testimony of a lawyer who was offered to testify regarding questions of fact and regarding the standards of law).
[34] *Askanase*, 130 F.3d at 673.

seizure, the expert has to explain what the law is, because the standard of care is defined in part by the law."[35]  Consider the court's order, the Fifth Circuit stated:

> The district court clearly specified the purpose of [the expert's] testimony, and properly indicated that the testimony as to legal issues was allowed because this standard necessarily involves what a reasonable lawyer needs to investigate and determine before seeking such an order.[36]

While it may involve mixed questions of fact and law—as in the applicability of the carrier's duty to secure cargo based on federal motor carrier safety regulations—expert testimony is specifically appropriate.  In order to consider the facts, it is necessary to discuss the applicable standards, which are created by among other grounds, applicable law.

In furtherance of their argument, Plaintiff points this Court to the *Gardner* decision, however, Plaintiff's reliance is misplaced.[37]  *Gardner* involved a different expert, with different qualifications, and completely different legal issues.[38]  Instead, Defendant avers that this Court would be better instructed to look to the *Franco* case.[39]  In *Franco,* Judge Doughty for the Western District of Louisiana was faced with a similar Motion *in Limine* seeking to exclude Mr. VanIngen.[40]  Judge Doughty denied Plaintiff's motion stating, "Mr. VanIngen . . . is an expert and can testify regarding whether there were any violations of applicable legal standards, including the laws of Louisiana to the extent he is able."[41]

Indeed, Mr. VanIngen may properly testify to the standards applicable to Mr. Reyes as a driver and Triple G as a carrier, and based on the facts of the case, may discuss the state and federal

---

[35] *Id.* at 533.

[36] *Id.*

[37] *See, Gardner v. Brand Energy Solutions, LLC, et al.*, No. 2:16-cv-16982 (E.D. La. 2018).

[38] *Id.*

[39] *Franco v. Mabe Trucking Co., et al.,* No. 5:17-CV-00871, Rec. Doc. No. 151 (W.D. La. 2019).

[40] *Id.*

[41] *Id.*

regulations applicable to motor carriers.  Mr. VanIngen does not opine on causation or contributory negligence. He also does not offer an opinion whether Triple G or plaintiff were negligent. Therefore, his opinions are admissible. Additionally, his opinions are necessary, as a layperson is not expected to be well-versed on the complex motor carrier regulatory framework, thereby necessitating the use of an expert.  Mr. VanIngen's higher degree of knowledge and experience related to the Federal Motor Carrier Safety Regulations will help the jury to understand the roles/duties of the different parties involved in this case, and determine whether Mr. Reyes and Triple G did in fact comply with the applicable state and federal motor carrier safety regulations.

**V.     Conclusion**

Plaintiff tries to cast Mr. VanIngen's opinions as "legal conclusions" when this is simply not the case.  Mr. VanIngen has worked in the transportation compliance industry for upwards of forty years and he is eminently qualified to opine on such regulations.  While it is the purview of the Court to instruct the jury as to the proper governing standard, Mr. VanIngen may provide a factual basis to the law.  For this reason, this Court should deny Plaintiff's Motion *In Limine* to Exclude Lane VanIngen.

Respectfully submitted,

**PUGH, ACCARDO, HAAS, RADECKER & CAREY, LLC**

*/s/G. Benjamin Ward_____*
MCGREADY L. RICHESON (LA. BAR NO. 29398)
G. BENJAMIN WARD (LA. BAR NO. 20403)
3300 Energy Centre, 1100 Poydras St.
New Orleans, LA  70163-3200
Telephone:     (504) 799-4500
Facsimile:      (504) 799-4520
mricheson@pugh-law.com
gbward@pugh-law.com
**ATTORNEYS FOR THE DOW CHEMICAL COMPANY**

11

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been forwarded via the Eastern District of Louisiana's ECF system and by electronic mail to all known counsel of record, on this the 14th day of December, 2021.

*/s/G. Benjamin Ward*